Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KANWAR SINGH,<br><br>    Plaintiff,<br><br>    v.<br><br>FIRST HORIZON CORPORATION, HARRY V. BARTON, JR., KENNETH A. BURDICK, DARYL G. BYRD, JOHN N. CASBON, JOHN C. COMPTON, WENDY P. DAVIDSON, WILLIAM H. FENSTERMAKER, BRYAN JORDAN, J. MICHAEL KEMP, SR., RICK E. MAPLES, VICKI R. PALMER, COLIN V. REED, E. STEWART SHEA III, CECELIA D. STEWART, RAJESH SUBRAMANIAM, ROSA SUGRANES, and R. EUGENE TAYLOR,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kanwar Singh ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

1

## NATURE OF THE ACTION

1.  This is an action against First Horizon Corporation ("First Horizon" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of First Horizon by TD Bank Group ("TD").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff is, and has been at all relevant times hereto, an owner of First Horizon common stock.

7. Defendant First Horizon operates as the bank holding company for First Horizon Bank that provides various financial services. The Company is incorporated in Tennessee. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "FHN."

8. Defendant Harry V. Barton, Jr. ("Barton") is a director of the Company.

9. Defendant Kenneth A. Burdick ("Burdick") is a director of the Company.

10. Defendant Daryl G. Byrd ("Byrd") is a director of the Company.

11. Defendant John N. Casbon ("Casbon") is a director of the Company.

12. Defendant John C. Compton ("Compton") is a director of the Company.

13. Defendant Wendy P. Davidson ("Davidson") is a director of the Company.

14. Defendant William H. Fenstermaker ("Fenstermaker") is a director of the Company.

15. Defendant Bryan Jordan ("Jordan") is President, Chief Executive Officer, and a director of the Company.

16. Defendant J. Michael Kemp, Sr. ("Kemp") is a director of the Company.

17. Defendant Rick E. Maples ("Maples") is a director of the Company.

18. Defendant Vicki R. Palmer ("Palmer") is a director of the Company.

19. Defendant Colin V. Reed ("Reed") is a director of the Company.

20. Defendant E. Stewart Shea III ("Shea") is a director of the Company.

21. Defendant Cecelia D. Stewart ("Stewart") is a director of the Company.

22. Defendant Rajesh Subramaniam ("Subramaniam") is a director of the Company.

23. Defendant Rosa Sugranes ("Sugranes") is a director of the Company.

24. Defendant R. Eugene Taylor ("Taylor") is a director of the Company.

25. Defendants Barton, Burdick, Byrd, Casbon, Compton, Davidson, Fenstermaker, Jordan, Kemp, Maples, Palmer, Reed, Shea, Stewart, Subramaniam, Sugranes, and Taylor are collectively referred to herein as the "Individual Defendants."

26. Defendants First Horizon and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

27. On February 28, 2022, First Horizon and TD announced that they had signed a definitive agreement for TD to acquire First Horizon in an all-cash transaction for $25.00 per share. The press release announcing the Proposed Transaction states, in pertinent part:

**TD to Expand in the Southeastern U.S. with Acquisition of First Horizon**

- Accelerates U.S. growth strategy, creating top 6 U.S. bank with immediate presence and scale in fast growing TD-adjacent markets
- Creates important future growth opportunities through combination of First Horizon and TD capabilities and customer-centric business models
- Financially compelling; all-cash transaction leverages TD's strong capital position and liquidity; immediately accretive to adjusted EPS at closing
- TD committed to retaining client-facing bankers with no planned closures of First Horizon banking centers in connection with the transaction
- TD to expand upon First Horizon's investments in local communities

NEWS PROVIDED BY
**First Horizon Corporation**
Feb 28, 2022, 06:32 ET

TORONTO and CHERRY HILL, N.J. and MEMPHIS, Tenn., Feb. 28, 2022 /PRNewswire/ -- TD Bank Group ("TD" or "the Bank") (TSX andNYSE: TD) and First Horizon Corporation ("First Horizon") (NYSE: FHN) today announced that they have signed a definitive agreement for TD to acquire First Horizon in an

all-cash transaction valued at US$13.4 billion, or US$25.00 for each common share of First Horizon. Through this financially compelling transaction, TD accelerates its long-term growth strategy in the United States by acquiring a premier regional bank with an aligned culture and risk-management framework.

\* \* \*

Following the closing of the transaction, Bryan Jordan, President and Chief Executive Officer of First Horizon, will join TD as Vice Chair, TD Bank Group, reporting to Bharat Masrani and will join the TD Senior Executive Team. He will also be named to the Boards of Directors of TD's U.S. banking entities as a director and Chair. Jordan will continue to be based in Memphis.

\* \* \*

The transaction is expected to close in the first quarter of TD's 2023 fiscal year, and is subject to customary closing conditions, including approvals from First Horizon's shareholders and U.S. and Canadian regulatory authorities. If the transaction does not close prior to November 27, 2022, First Horizon shareholders will receive, at closing, an additional US$0.65 per share on an annualized basis for the period from November 27, 2022 through the day immediately prior to the closing. The transaction will terminate, unless otherwise extended, if it does not close by February 27, 2023.

TD expects to use excess capital on its balance sheet for the transaction, reflecting its robust capital and liquidity position. Concurrent with this announcement, TD separately announced that the automatic share purchase plan established for its normal course issuer bid will automatically terminate in accordance with its terms. At close, TD's Common Equity Tier 1 ratio is expected to be above 11%[7].

Based on First Horizon's December 31, 2021 balance sheet, the acquisition would add approximately US$55 billion of loans and US$75 billion of deposits to TD's balance sheet, and TD would expect to take a credit mark at close of US$880 million, or 161 basis points of loans.

In addition, TD has agreed to invest US$494 million in non-voting First Horizon preferred stock (convertible in certain circumstances into up to 4.9% of First Horizon's common stock) to support First Horizon's growth and franchise enhancement, including employee retention programs.

\* \* \*

**Advisors**

TD Securities and J.P. Morgan served as financial advisors and Simpson Thacher & Bartlett LLP and Torys LLP served as legal advisors to TD. Morgan Stanley &

Co. LLC served as financial advisor and Sullivan and Cromwell LLP served as legal advisor to First Horizon.

\* \* \*

**About TD**

The Toronto-Dominion Bank and its subsidiaries are collectively known as TD Bank Group ("TD" or the "Bank"). TD is the fifth largest bank in North America by assets and serves more than 26 million customers in three key businesses operating in a number of locations in financial centres around the globe: Canadian Retail, including TD Canada Trust, TD Auto Finance Canada, TD Wealth (Canada), TD Direct Investing, and TD Insurance; U.S. Retail, including TD Bank, America's Most Convenient Bank®, TD Auto Finance U.S., TD Wealth (U.S.), and an investment in The Charles Schwab Corporation; and Wholesale Banking, including TD Securities. TD also ranks among the world's leading online financial services firms, with more than 15 million active online and mobile customers. TD had CDN$1.7 trillion in assets on October 31, 2021. The Toronto-Dominion Bank trades under the symbol "TD" on the Toronto and New York Stock Exchanges.

**About First Horizon**

First Horizon (NYSE: FHN), with $89.1 billion in assets as of December 31, 2021, is a leading regional financial services company, dedicated to helping our clients, communities and associates unlock their full potential with capital and counsel. Headquartered in Memphis, TN, the banking subsidiary First Horizon Bank operates in 12 states across the southern U.S. The Company and its subsidiaries offer commercial, private banking, consumer, small business, wealth and trust management, retail brokerage, capital markets, fixed income, mortgage, and title insurance services. First Horizon has been recognized as one of the nation's best employers by Fortune and Forbes magazines and a Top 10 Most Reputable U.S. Bank. More information is available at www.firsthorizon.com

28. On April 12, 2022, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

29. The Proxy Statement, which recommends that First Horizon shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the financial analyses performed by the Company's financial advisor, Morgan Stanley & Co.

6

LLC ("Morgan Stanley"), in connection with its fairness opinion; and (ii) potential conflicts of interest involving Company insiders.

30.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) First Horizon's Reasons for the Merger; Recommendation of First Horizon's Board of Directors; and (ii) Opinion of First Horizon's Financial Advisor.

31.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, First Horizon shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Morgan Stanley's Analyses

32.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Morgan Stanley.

33.     With respect to Morgan Stanley's "*First Horizon Public Trading Comparables Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company Morgan Stanley observed in its analysis.

34.     The Proxy Statement fails to disclose the following concerning Morgan Stanley's "*First Horizon Dividend Discount Analysis*": (1) the individual inputs and assumptions underlying (i) the 5.0% annual growth rate, (ii) that First Horizon would make distributions of capital in excess of the amount necessary to achieve a 9.75% common equity Tier 1 ratio level, and (iii) the multiples and discount rates used in the analysis; (2) the projected dividends on shares of First Horizon common stock as of December 31, 2021 through December 31, 2026; and (3) the terminal value of First Horizon.

7

35. The Proxy Statement fails to disclose the following concerning Morgan Stanley's "*First Horizon Analyst Price Targets Analysis*": (1) the individual price targets observed by Morgan Stanley in its analysis; and (2) the sources thereof.

36. The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Morgan Stanley's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

37. Without the information described above, the Company's shareholders are unable to fully understand Morgan Stanley's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

38. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

39. The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

40. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting

solely in the best interests of the Company's shareholders.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

44. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

45. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

46. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

52. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 22, 2022  Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
       zhalper@halpersadeh.com

*Counsel for Plaintiff*